*346 OPINION.
TRAMmbll :
The only issue in this proceeding is whether the transfers here involved were made in contemplation of death. Section 402 of the Revenue Act of 1921 provides in part as follows:
That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—
*******
(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money’s worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, *347 shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.
Inasmuch as the property placed in trust on June 18, 1920, was transferred within two years prior to the decedent’s death, there is a presumption under the statute that it was made in contemplation of death. The transfers made on February 24, 1920, having been made more than two years before the decedent’s death, are not within the presumption created by the statute. The petitioners contend that none of the transfers were made in contemplation of death, while the respondent contends that they were all made in contemplation of death.
• We have heretofore discussed in a number of cases what is meant by the phrase “ in contemplation of death ” as used in the statute and no useful purpose would be served by repeating such discussion here. See Estate of George A. Wheelock, 13 B. T. A. 828; Isaac Gimbel et al., Executors, 11 B. T. A. 214; Joseph Edward Phillips, Executor, 7 B. T. A. 1054; and Philip T. Starch, Executor, 3 B. T. A. 514.
The petitioners have submitted the testimony of several witnesses who were acquainted with the decedent during the last several years of his life and who during that time saw him frequently, some of them seeing him as often as two or three times a week. These witnesses invariably testified to the decedent taking an active interest in his business and to facts which indicate that the decedent had a clear and active mind up until a short time before his death. There is also much testimony relating to how the decedent would always be traveling alone about the community in which he lived and adjoining sections, attending to his business affairs up until a few months before his death. Several witnesses also testified as to what the decedent said on various occasions about the long life of the older members of his family and of his expectation to live as long or longer than they. The petitioners offered no testimony as to the decedent’s physical condition on of about the specific dates on which the transfers were made.
As to the physical condition of the decedent during the last several years of his life, the respondent offered the testimony of Dr. Howton, who attended him for a number of years prior to his death. The petitioners objected to the testimony of Dr. Howton as to the physical condition of the decedent on the ground that it constituted a disclosure of information received by him by virtue of his being the decedent’s physician. In view of the inhibition contained in section 1073 of the Code of the District of Columbia against a physician disclosing “ any information, confidential in its nature, which he shall have acquired in attending a patient in a professional capacity and which was necessary to enable him to act in that capacity ” without *348 the consent of the person afflicted or his legal representatives, the objection was sustained. Other testimony of Howton not included in the objection shows that during the last four or five years of the decedent’s life there were times when Howton would at the decedent’s request see him four or five times a day. As the record stands, it does not show what the decedent’s trouble was. It does not show whether his illness was only a temporary condition or of a chronic and incurable nature likely to result in sudden death, and that the decedent knew it to be such. The answer to these and other questions is left entirely to speculation. Hr. Shaddon, a witness for the petitioners, testified on cross-examination that in consultation with another physician, whose identity was not disclosed, he saw the decedent professionally about a year prior to his death. He did not state what the condition of the decedent was at that time. However, he did testify that during the five or six months prior to the decedent’s death he suffered from heart attacks which at times caused the decedent to be “laid up.” The witness was unable to state how long before the decedent had been suffering from heart attacks.
The petitioners urge that the transfers made in February, 1920, were made only in pursuance of an expression to do so made many years before. However, no explanation is offered as to why they were made at this particular time, especially in view of the fact that for many years the decedent had been giving the income from the farms to his sons. The reason advanced for the transfer made to his daughter in June, 1920, was that the decedent wished to provide for her comfort in case her son “ got in a jam ” and obtained her property. While the evidence shows that the daughter had been living in the house with the decedent practically all of the time for about 18 years prior to the decedent’s death, no explanation is offered as to why this transfer was made at the particular time that it was.
Considering all the evidence, we are of the opinion that the petitioner has not sustained the burden of overcoming the statutory presumption that the transfer made within two years prior to death, or the presumption of the correctness of the Commissioner’s determination that the prior gifts were made in contemplation of death within the meaning of the statute. This action of the respondent is accordingly approved.
Reviewed by the Board.

Judgment will be entered for the respondent.

Smith, VaN FossaN, and Black dissent.